UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

                                                       Case No.: 12-76440-ast

American Land Acquisition Corporation,      Chapter 7

                         Debtor.
-----------------------------------------------------------X

## DECISION AND ORDER DENYING DEBTOR'S MOTION FOR A STAY PENDING APPEAL

Pending before the Court is the June 4, 2013 motion of the debtor, American Land Acquisition Corporation ("Debtor"), by counsel, seeking entry of an order granting a stay pending appeal of this Court's May 22, 2013 Order authorizing the Chapter 7 Trustee to sell Debtor's commercial real property (the "Motion to Stay") [dkt item 89]. On June 6, 2013, Marc A. Pergament, the Chapter 7 Trustee of the Debtor's estate (the "Trustee"), filed an objection to the Motion (the "Objection to Stay") [dkt item 97]. For the reasons set forth below, Debtor's request for a stay pending appeal is denied; Debtor has failed to show that it will suffer actual and imminent irreparable injury if the sale of the bankruptcy estate's commercial real property is not stayed; Debtor has failed to show that the bankruptcy estate will not suffer substantial injury if a stay is granted; Debtor has failed to demonstrate that its appeal has a substantial possibility of success on the merits; and Debtor has failed to demonstrate that the public interest supports granting a stay.

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(b)(2)(A), (N) and (O); the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made

effective *nunc pro tunc* as of June 23, 2011; and Rule 8005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background and Procedural History

On October 26, 2012, Debtor filed a *pro se* petition for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*) (the "Petition"). [dkt item 1]  The Petition was signed by Dale R. Javino ("Javino") under penalty of perjury, acting as President of the Debtor. Debtor subsequently disclosed that the Petition was filed three days before a scheduled foreclosure sale of Debtor's commercial real property located at 1000 Tenth Street, Ronkonkoma, New York (the "Property").[1]  The foreclosure sale was scheduled by Wayne Miller ("Miller"), who claims to hold a second mortgage on the Property, and who sought to foreclose pursuant to a prepetition judgment of foreclosure entered by a state court of competent jurisdiction on September 19, 2012.  Miller is the only creditor listed on Debtor's bankruptcy Petition.  Thereafter, Debtor disclosed that the Estate of Joseph Gazza ("Gazza") holds a first mortgage on the Property.[2]

Marc A. Pergament was appointed interim Chapter 7 Trustee of Debtor's bankruptcy estate, and has since qualified as the permanent trustee and is currently acting in that capacity.

On December 19, 2012, Debtor filed a *pro se* motion to dismiss this case, alleging that "it was filed by mistake" (the "Motion to Dismiss"). [dkt item 14]  Opposition to the Motion to Dismiss was filed by the Trustee [dkt item 18] and by Miller [dkt item 17].  Debtor filed a Reply Affidavit in support of the Motion to Dismiss (the "Reply Affidavit").  [dkt item 24]

---

[1] *See* Reply Affidavit in support the motion to dismiss at ¶¶ 5-7 [dkt item 24]; Minutes of Debtor's special shareholder meeting held on October 25, 2012.  [dkt item 24-6, Ex. "O"]

[2]  Gazza has not filed a proof of claim or otherwise appeared in this case. After Javino was held in contempt, Debtor finally filed Schedules on May 21, 2013, which fail to include Gazza, although Debtor acknowledges the debt in its Motion to Stay. *Compare* Schedules at dkt item 76, *with* Motion to Stay at ¶¶ 8, 11(d) [dkt item 89].

2

On February 19, 2013, an evidentiary hearing was held on the Motion to Dismiss, at which evidence were presented by Debtor, the Trustee, and Miller (the "February 19 Hearing"). Testimony was taken from Javino and from Eugene Smith ("Smith"), with whom Javino claimed Debtor had a prepetition contract to sell a fifty percent interest in the Property for $500,000, which contract had not yet been consummated as of the Petition Date. At the conclusion of that hearing, the Court stated its findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, including its finding that Debtor voluntarily filed the Petition for the purpose of frustrating Miller's foreclosure sale by taking advantage of the automatic stay. These findings are supported, in part, by Debtor's Exhibit "O" to its Reply Affidavit [dkt item 24-6, Ex. "O"], the Minutes of an October 25, 2012, special meeting of Debtor's shareholders (the "Minutes"), which was held to "DECIDE THE ROUTE OF REDRESS FOR THE FORECLOSURE AND SALE OF THE [PROPERTY]." The Minutes state that Javino was elected Chairman of the special shareholder meeting, and further state:

> THERE IS A FORECLOSURE SALE OF THE PROPERTY DATED FOR OCTOBER 29, 2012 AND THE SUBJECT OF THE LAWSUIT. . . . IT WAS TIME TO TAKE EVASIVE ACTION AND FILE AN EMERGENCY STAY WITH THE HONORABLE BANKRUPTCY COURT UNDER ANY CHAPTER IN THE BEST INTEREST OF THE CORPORATION Chapter 7 or 11 FOR REORGANIZATION OR LIQUIDATION[.] NO TIME TO HIRE BANKRUPTCY COUNSEL. COURT WILL GIVE US TIME TO HIRE COUNSEL[.] BEGIN SEEKING COUNSEL[.] SO BE IT. MEETING WAS ADJOURNED ON MOTION BY DALE R. JAVINO AND THE ACTION WAS COMMENCED.

Reply at Ex. "O" [dkt item 24-6]. Javino signed these Minutes as President and Secretary of Debtor.

The Court further concluded at the February 19 Hearing that the best interests of creditors were served by allowing the Trustee to liquidate the estate's assets and pay creditors as directed

under the Bankruptcy Code. The Court denied the Motion to Dismiss on the record and directed Debtor to obtain counsel before filing any further motions or otherwise participating in this case.

On February 20, the Court entered an Order denying the Motion to Dismiss (the "Order Denying Dismissal"). [dkt item 30]

On February 22, the Trustee filed a Motion to designate Javino as Debtor's responsible person and to direct Javino to appear at the § 341 meeting of creditors, file schedules, and produce Debtor's books and records (the "Motion to Designate"). [dkt item 32] Javino filed opposition to the Motion. [dkt item 35]

On February 28, Debtor filed a *pro se* motion to reconsider the Order Denying Dismissal (the "Motion to Reconsider"). [dkt item 36]

Also on February 28, Debtor filed a *pro se* Notice of Appeal of the Order Denying Dismissal [dkt item 37] and a *pro se* Motion for Leave to Appeal [dkt item 39]. That appeal is now pending before Judge William F. Kuntz, II, United States District Court for the Eastern District of New York (the "District Court"). *See* E.D.N.Y. Civ. Case No. 13-mc-216-WFK.

On March 14, this Court entered an Order denying the Motion to Reconsider both because the motion was an improper *pro se* filing[3] and because Debtor had failed to point to any fact or controlling decision or law this Court overlooked in entering the Order Denying Dismissal (the "Order Denying Reconsideration"). [dkt item 46] In denying reconsideration, the Court noted its concerns "about whether Debtor's Petition was filed as part of a calculated decision to 'manipulate the system.'" Order Denying Reconsideration at p. 6.

---

[3] *See*, *e.g.*, *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006) ("[i]t is settled law that a corporation may not appear in a lawsuit against it except through an attorney"); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) ("Since, of necessity, a natural person must represent the corporation in court, we have insisted that that person be an attorney licensed to practice law before our courts.").

On March 20, the Trustee filed a motion to sell the Property to Gemini Property Acquisitions, LLC ("Gemini") for $600,000, subject to higher and better offers and subject to certain environmental reviews of the Property (the "Sale Motion"). [dkt item 50]  According to the Sale Motion, the Trustee retained Reliant Realty Group, LLC ("Reliant") as his commercial real estate broker. Reliant marketed the Property and negotiated with several potential purchasers, including Smith, who declined to purchase the Property from the Trustee. Sale Motion at ¶¶ 6-8, 11.  According to the Sale Motion, the Trustee and Reliant negotiated the $600,000 arm's length sale of the entirety of the Property to Gemini, which would provide sufficient funds to satisfy the Gazza and Miller mortgages and all applicable taxes, pay all known creditors, and provide a surplus to Debtor's equity holders. Sale Motion at ¶ 10. The Sale Motion was scheduled for hearing on May 21, 2013.

On March 21, a hearing was held on the Trustee's Motion to Designate (the "March 21 Hearing") at which counsel for the Trustee and an attorney[4] appeared for Debtor. At the conclusion of the March 21 Hearing, the Court granted the Motion to Designate as per the terms stated on the record.

On March 26, Gemini's counsel contacted the Trustee's counsel to advice that a recent title search of the Property revealed that on February 22, 2013, the Clerk of Suffolk County, New York recorded a deed filed by Javino transferring title to the Property from Debtor to Javino (the "Deed"); although filed in February 2013, and thus several months after this bankruptcy case was filed, the Deed is dated October 5, 2008, and is purportedly signed by a David Hernandez ("Hernandez"), acting as vice president of the Debtor.

---

[4] Attorney Paul Siepmann appeared for Debtor at the March 21 Hearing and disclosed having also representing Javino individually and Smith. Mr. Siepmann did not file a notice of appearance in this case and has not appeared since the March 21 Hearing.

On April 1, the Court entered an Order designating Javino as Debtor's responsible person (the "Order Designating Responsible Person") [dkt item 54] which, *inter alia*, directed Javino to appear at a § 341 meeting of creditors scheduled for April 11, to turn over Debtor's books and records to the Trustee by April 8, and to otherwise assist the Trustee in administering the estate.

Also on April 1, the Trustee filed an emergency motion to void the Deed and to sanction Javino for violating the automatic stay and for interfering with the administration of the estate (the "Motion to Void Deed"). [dkt item 52]

On April 3, without authorization from this Court[5], Javino sued the Trustee and his law firm in the District Court for alleged constitutional rights violations relating to the Trustee's actions in administering the estate and marketing and selling the Property. *See* E.D.N.Y. Case No. 13-cv-1951-WFK (the "Javino Action").

On April 9, a hearing on shortened notice was held on the Motion to Void Deed at which the Trustee appeared by counsel and Javino appeared. The Court granted the Motion in part and voided the Deed by Order dated April 10 [dkt item 58][6], and the Court took the Trustee's request to hold Javino in contempt on submission. The Court directed Javino to file a response to the Motion to Void Deed to address the issue of sanctions, which Javino filed on April 22. [dkt item 65] The portion of the Motion to Void Deed relating to sanctions for Javino's intentional interference with the administration of the estate remains on submission with the Court.

---

[5] Under the so-called *Barton* Doctrine, "a party must first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the trustee's official capacity." *In re VistaCare Group, LLC*, 678 F.3d 218, 232 (3rd Cir. 2012) (discussing *Barton v. Barbour*, 104 U.S. 126 (1881)); *see In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996). 11 U.S.C. § 959(a) creates a statutory exception to the *Barton* Doctrine where the trustee is actually operating the debtor's business. However, "where a trustee 'acting in his official capacity conducts no business connected with the property other than to perform administrative tasks necessarily incident to the consolidation, preservation, and **liquidation of assets in the debtor's estate**,' § 959(a) does not apply, and leave of court is still required before filing suit against the trustee." *VistaCare*, 678 F.3d at 276 (quoting *Lehal Realty*, 101 F.3d at 276) (emphasis added).

[6] At the Trustee's request, an amended Order voiding the deed was entered on June 3 to clarify the Property description. [dkt item 83]

On April 30, although an appeal of the Order Denying Dismissal was pending, Javino filed an application with the District Court in the Javino Action for a temporary restraining order (the "Application for TRO"), seeking to block the sale of the Property.

On May 1, the Trustee filed a motion in the bankruptcy case to hold Javino in contempt of Court, for his failure to comply with the Order Designating Responsible Person and for continuing to interfere with the administration of the estate (the "Motion for Contempt"). [dkt items 65, 66] The Motion for Contempt was scheduled for a hearing on May 21.

On May 10, the District Court entered a Memorandum and Order in the Javino Action denying Javino's Application for TRO (the "Memorandum Denying TRO"). *Javino v. Pergament*, No. 13-cv-1951-WFK, 2013 WL 1952639 (E.D.N.Y. May 10, 2013) (Kuntz, J.).

On May 15, Javino finally appeared to be examined by the Trustee under oath. A copy of the transcript is filed at docket item 96 (the "Transcript"). During this examination, Javino acknowledged entering the Property post-petition, including the day before his examination, without authorization from the Trustee or this Court. Transcript at pp. 8-10. Javino declined to answer the Trustee's question how he entered the Property, which the Trustee had locked. Transcript at pp. 16-17. Javino further stated, for the first time, that Hernandez was actually the owner of Debtor in 2008, not Javino, and that the Deed was granted in 2008 to Javino to secure repayment of funds Javino purportedly loaned to Debtor. Transcript at pp. 17-18. Javino also stated, for the first time, that Hernandez was the owner and an officer of Debtor as of the Petition Date, that Hernandez did not authorize the filing of the Petition, and that Hernandez "I believe still owns it" referring to Debtor. Transcript at pp. 29-31. This testimony directly contradicts Javino's prior statements that he is the owner and president of Debtor.[7] Also at the examination,

---

[7] Javino had not referred to Hernandez prior to recording the Deed and appearing on May 15 to be examined by the Trustee; in fact, on several occasions, Javino specifically referred to himself as Debtor's owner. *See*, *e.g.*, Reply

7

Javino revealed for the first time that Debtor has an interest in five other parcels of real property. Transcript at pp. 21-23.

On May 16, Javino, in his individual capacity, filed an objection to the Trustee's Motion for Contempt. [dkt item 70][8]

On May 17, Debtor filed a *pro se* motion to convert this case to Chapter 11 [dkt item 75], which the Court denied by Order entered on June 4 [dkt item 90] as another improper *pro se* filing.

On May 21, hearings were held on the Trustee's Sale Motion and Motion for Contempt, at which counsel for the Trustee appeared and newly retained counsel for the Debtor appeared[9] together with Javino (the "May 21 Hearing"). No party had filed opposition to the Sale Motion, which as of May 21 had been pending for sixty days. Nevertheless, Debtor requested a two-week adjournment of the Sale Motion hearing to allow counsel to familiarize himself with the case. The Court denied the adjournment request because the Sale Motion had been pending for two months and the Court had repeatedly directed Javino, both orally at hearings and in written orders, that if he wanted to act on behalf of Debtor, Debtor would have to obtain counsel.

At the May 21 Hearing, the Trustee testified in support of the Sale Motion. Debtor argued that the sale price was too low; however, Debtor offered no evidence of any higher or better offers, and provided no credible evidence that the Property could be sold for more

---

Affidavit at ¶ 13 ("without regard for the debtor's rights and the debtor's owner myself"); Statement of Financial Affairs, filed on May 21, 2013, after the examination on May 15, which lists "Dale Robert Javino" as Debtor's sole partner, officer, director and shareholder, and makes no mention of Hernandez. [dkt item 76]

[8] Annexed to Javino's objection is an Affidavit of Anibal Matos ("Matos") which states, *inter alia,* that Matos had "taken over the officer positions" of Debtor on November 1, 2011, and that Javino was not authorized to file the Petition because Javino "became an official officer [of Debtor] on November 1, 2012," five days after the Petition was filed. As noted above, however, Javino was acting and holding himself out as an officer of Debtor prior to November 1, 2012, signing the Minutes as President and Secretary and signing the Petition as President.

[9] Michael McNamara, Esq., filed a Notice of Appearance as counsel for Debtor on May 21, 2013. [dkt item 77]

8

money.[10] The Court orally approved the Sale Motion. Debtor did not seek a stay at the May 21 Hearing.

The Court then turned to the Motion for Contempt. After noting the long history of this case and Debtor's and Javino's repeated violations of this Court's orders, particularly with respect to the filing of schedules and appearance at § 341 meetings, the Court determined that there was clear and convincing evidence that Javino was intentionally interfering with the administration of this bankruptcy estate, and should be held in contempt of Court. The Court directed that Javino be sanctioned $500 per day until he fully complied with the Order Designating Responsible Person, including filing all Schedules and Statements required to be filed by a Chapter 7 debtor, appearing at the § 341 meeting, and turning over Debtor's books and records. The Court set July 16, 2013 as the hearing to determined Javino's compliance with this Court's Orders.

Immediately following being held in contempt at the May 21 Hearing, and despite numerous prior protestations by Javino that he could not file proper schedules, Debtor filed certain Schedules on May 21 (the "Schedules"). [dkt item 76] The Schedules are incomplete and inconsistent with numerous prior statements made by Javino. For example, Schedule A lists the Property as having a value of $1.1 million; however, in Debtor's Motion to Stay, filed two weeks later on June 4, Debtor states that "the [P]roperty has an approximate value of $800,000.00." On Schedule D, Debtor lists the Miller mortgage and two tax liens; however, no mention is made in the Schedules of the Gazza mortgage, even though Debtor and Javino have

---

[10] In its pleadings, Debtor has asserted various values for the Property, none of which Debtor has substantiated. For example, at the February 19 Hearing, Debtor asserted the Property's value was $1 million, based upon its purported prepetition contract with Smith to sell a fifty percent interest in the Property for $500,000. During the February 19 Hearing, and with the parties present, the Court telephoned Smith. Contrary to Javino's statements at the February 19 Hearing, Smith did not state that he or his entity was ready, willing and able to close on a purchase of the Property and make an unconditional good faith deposit toward such a purchase.

specifically acknowledged the existence of this mortgage on several occasions with an alleged balance due of $175,000.  *See*, *e.g.*, Motion to Stay at ¶¶ 8, 11(d) [dkt item 89]; Reply Affidavit at ¶¶ 3-6.

On May 22, the Court entered an Order granting the Trustee's Sale Motion (the "Sale Order") [dkt item 79], which is the subject of the instant Motion to Stay.  The Sale Order, *inter alia*, approved the Sale Motion and authorized the Trustee to proceed with the sale of the Property to Gemini for $600,000; however, because Javino insisted he could sell the Property for more, the Court  provided Debtor and Javino until June 5 to locate or procure an alternative buyer ready, willing and able to acquire the Property for $615,000 or more on the same terms and conditions as were set out in the Sale Motion, and that such funds be deposited with the Trustee pending a closing.  To date, Debtor has not advised the Court of having located or procured any such alternative buyer.

On June 3, the Court entered an Order granting the Motion for Contempt. [dkt item 84]

### **Debtor's Motion to Stay Pending Appeal**

On June 4, Debtor filed a Notice of Appeal of the Sale Order [dkt item 88] and the instant Motion to Stay [dkt item 89], requesting an immediate two-week stay of the sale of the Property. In the Motion to Stay, Debtor states, without explaining why a two-week stay is sought, that it "will suffer irreparable damage if the property is sold" for the following reasons:

a. The corporation will be left with little or no assets and will not be able to operate[.]

b. The Debtor will be forced to pay commissions and attorneys' fees that should never have been allowed or accumulated in origin [sic].

c. The property has an approximate value of $800,000.00, but is being sold at $600,000.00.  The Debtor will never recapture the difference.

        d.        The 1st mortgage will be paid the amount of $275,000.00, at least $100,000.00 [more] than is actually owed causing great damage to the shareholders."

Motion to Stay at ¶ 11. In the Motion to Stay, Debtor repeats a number of its prior, discredited statements and makes numerous unsubstantiated factual assertions, including its belief that its Petition was being filed under Chapter 11 and that "[i]t was never the intention of the Debtor to dissolve or to sell off its assets, as would be the case under [Chapter] 7." Motion to Stay at ¶ 5. Debtor further alleges that "Dale Javino did not have the standing or authority to file a petition on behalf of the Debtor." Motion to Stay at ¶ 6. Additionally, Debtor argues that creditors will not benefit from proceeding with the sale. Notably, the Motion to Stay makes no mention of, and does not offer to post, a supersedeas bond pending the appeal.

On June 5, at the Court's request, the Trustee filed a letter [dkt item 95] advising the Court and Debtor that the Trustee was awaiting clearance from a planned environmental review of the Property prior to closing the sale, which review was due to be completed by June 14, 2013.

On June 6, the Trustee filed his Objection to Stay [dkt item 97], the applicable portions of which are discussed below.

## DISCUSSION

Bankruptcy Rule 8005 provides, in relevant part, that "[a] motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance." FED. R. BANKR. P. 8005. "In the Second Circuit, the standard governing the entry of a stay pending appeal is: '(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal,

11

and (4) the public interests that may be affected.'" *In re TE Roslyn, LLC*, 2012 WL 3063991, at *3 (Bankr. E.D.N.Y. July 26, 2012) (quoting *In re Taub*, 470 B.R. 273, 277-78 (E.D.N.Y. 2012) (Kuntz, J.)); *see In re Smith*, 2009 WL 366577, at *2 (E.D.N.Y. Feb. 12, 2009), *aff'd*, 645 F.3d 186 (2d Cir. 2011); *In re Atkinson*, 2012 WL 6138217, at *3 (Bankr. E.D.N.Y. Dec. 11, 2012); *see also Jenkins v. INS*, 32 F.3d 11, 14 (2d Cir. 1994); *Hirschfeld v. Bd. of Elections in the City of N.Y.*, 984 F.2d 35, 29 (2d Cir. 1993).

The party seeking a stay pending appeal bears the burden of proving it is entitled to a stay. *See U.S. v. Private Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) ("A party seeking a stay of a lower court's order bears a difficult burden."). As discussed below, Debtor has failed to meet its burden of proof that it is entitled to a stay pending appeal.

**1. Debtor Has Not Shown It Will Suffer Actual and Imminent Irreparable Injury**

A party seeking a stay pending appeal must show a "probable irreparable harm" that is "neither remote nor speculative, but actual and imminent." *Taub*, 470 B.R. at 278 (quoting *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347 (S.D.N.Y. 2007)). The mere "possibility that an appeal will be rendered moot by a denial of stay does not, in and of itself, constitute irreparable harm." *In re Baker*, 2005 WL 2105802, at *9 (E.D.N.Y. Aug. 31, 2005). Further, injuries that are "fully remedied by monetary damages do not constitute irreparable harm." *Taub*, 470 B.R. at 27 (citing *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.2d 30, 34 (2d Cir. 1991)). "[A]bsent special circumstances, the sale of commercial property does not create an irreparable harm, since any harm due to the sale of the property or interference with the business can be remedied with monetary damages." Memorandum Denying TRO, 2013 WL 1952639, at *1 (citing *In re Taub*, 470 B.R. at 278; *Dexter 345 Inc. v. Cuomo*, No. 11 CIV. 1319, 2011 WL 1795824, at *2-3 (S.D.N.Y. May 3, 2011), *aff'd*, 663 F.3d 59 (2d Cir. 2011)).

Here, Debtor has failed to demonstrate irreparable harm. It is undisputed that the Property at issue is commercial real property. Accordingly, the sale of the Property "does not create irreparable harm" because it can be fully remedied with money damages, if Javino is ultimately able to reverse the Sale Order and prevail in the Javino Action[11]. *See* Memorandum Denying TRO, 2013 WL 1952639, at *1. Further, the reasons cited in Debtor's Motion to Stay for why a sale of the Property, as authorized by this Court's Sale Order, would result in irreparable injury to Debtor are similarly without merit.

Debtor contends it will suffer irreparable injury if the sale proceeds because "[t]he corporation will be left with little or no assets and will not be able to operate." Motion to Stay at ¶ 11(a). This assertion is directly contracted by Debtor's own Schedules which state that Debtor owns or holds an interest in five other parcels of real property located throughout New York State, and that its assets far exceed its scheduled liabilities. *See* Schedules [dkt item 76]. In addition, both the Trustee's Sale Motion and Debtor's Motion to Stay make clear that there is equity in the Property above the two purported mortgage liens, which equity would flow to Debtor's shareholders after payment of taxes, administrative expenses, and other allowed claims against the estate.

Debtor next contends it will suffer irreparable harm because it "will be forced to pay commissions and attorneys' fees." Motion to Stay at ¶ 11(b). First, Debtor's speculation about the amount of commissions and attorney's fees is premature because this Court has not approved any commissions or fees either on an interim or final basis; such request for commissions and fees would have to be sought by separate motion on notice to Debtor and creditors. More importantly, however, such commissions and fees are the direct and necessary result of Debtor

---

[11] This statement should by no means be considered an endorsement of Javino having filed the Javino Action, or a comment on the merits of same.

filing a voluntary bankruptcy Petition on October 26, 2012, as was authorized by the Minutes of Debtor's October 25, 2012 special shareholders meeting. The work performed by the Trustee and his professionals was necessitated by Debtor's voluntary filing and by the provisions of federal bankruptcy law. The efforts of the Trustee and his professionals has resulted in the highest and best actual offer to purchase the Property that has been presented to and approved by this Court after a hearing on full and proper notice. In any event, Debtor would have very likely incurred broker's fees and attorney's fees if it had attempted to sell the Property outside bankruptcy.

Debtor's other allegations regarding irreparable harm are equally without merit. Debtor's unsubstantiated and self-serving statement that the Property's actual value is $800,000 is contracted by Debtor's own Schedules (which list the value at $1.1 million) and by the only competent evidence before this Court of the Property's market value.[12] The Trustee's marketing of the Property has resulted in a real, bona fide, arm's length offer by Gemini to purchase the Property for $600,000, after substantial marketing efforts were undertaken by the Trustee and his broker. Debtor argues this value is too low, pointing to the purported prepetition contract with Smith to sell a fifty percent interest in the Property for $500,000, which as noted above, and based on Smith's own testimony, does not have any realistic prospect of being closed; further, as noted in the Sale Motion, the Trustee offered to sell the entire Property to Smith for $615,000, and Smith declined. Moreover, this Court's Sale Order expressly granted Javino an additional two weeks to locate or procure a higher and better offer, and Javino and Debtor have failed to do

---

[12] The United States Supreme Court has noted that, in bankruptcy, "the value of the property . . . is the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller." *Assocs. Commer. Corp. v. Rash*, 520 U.S. 953, 960 (1997); *see Bank of Am. Nat. Trust & Sav. Ass'n v. 203 North La Salle P'ship*, 526 U.S. 434, 457 (1999) ("the best way to determine value is exposure to a market"); *see also In re Boston Generating, LLC*, 440 B.R. 302, 326 (Bankr. S.D.N.Y. 2010); *In re Panther Mountain Land Dev., LLC*, 438 B.R. 169 (Bankr. E.D. Ark. 2010).

so.  Further, as noted in the Trustee's Objection to Stay, even assuming Debtor's $800,000 valuation is correct, the current sale price of $600,000 represents a reasonable bankruptcy sale price.  Objection to Stay at ¶¶ 35-36.

Finally, Debtor's assertion that it will be irreparably harmed because the estimate in the Sale Motion of the outstanding balance of the Gazza mortgage is higher than Debtor believes it to be is simply irrelevant.  Debtor failed to schedule the Gazza mortgage altogether, even though its Motion to Stay acknowledges a debt of at least $175,000 secured by a purported first mortgage on the Property.  Debtor's objection is also misplaced because the Trustee has not been authorized to pay the mortgages; the Sale Order specifically provides that "[t]he Trustee's request for authorization to pay the first mortgage of the Estate of Joseph Gazza and the second mortgage of Wayne Miller shall be determined by the Court at a hearing to be scheduled by the Trustee on no less than seventeen (17) days' notice."  Sale Order at ¶ 9 [dkt item 79].

Accordingly, Debtor has failed to demonstrate any actual and imminent injury that it will suffer if the Sale Order is not stayed and, therefore, the Motion to Stay should be denied.

## 2.  The Bankruptcy Estate Will Suffer Substantial Injury if a Stay Is Granted

Even assuming that Debtor might suffer some injury if the sale proceeds, that injury must be weighed against the possibility of substantial injury to the bankruptcy estate.  *See Adelphia*, 361 B.R. at 347 ("the Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed.").  As the party seeking a stay pending appeal, Debtor bears the burden of proving that the estate will not suffer substantial injury if a stay is granted.  *See Baker,* 2005 WL 2105802, at *10; *see also Smith*, 2009 WL 366577, at *2.

Here, the Trustee has a ready, willing and able buyer and a signed contract to sell the Property to Gemini for $600,000, an amount sufficient to satisfy all mortgages, tax liens, and filed claims. However, as the Trustee points out, "Debtor ignores that the contract vendee [Gemini] will be deprived of its right to purchase the Real Property if the stay is issued." Objection to Stay at ¶ 39. Even more significantly, this bankruptcy estate "will likely be harmed by the issuance of a stay because the contract vendee may elect to cancel the contract, which would cause the Estate to suffer substantial harm" and would deprive the estate of its apparently most valuable asset. *Id.* at ¶ 40. Accordingly, this Court finds that the bankruptcy estate would suffer substantial injury if the Sale Order is stayed.

**3. Debtor Has Failed to Show a Substantial Possibility of Success on Appeal**

In considering a request for a stay pending appeal, the single most important factor is the possibility of success on the merits. *See Taub*, 470 B.R. at 278 (quoting *Baker*, 2005 WL 2105802, at *3). However, in its Motion to Stay, Debtor does not even address the possibility of ultimate success of its appeal of the Sale Order. Debtor had not filed a written objection to the Sale Motion. More importantly, though, Debtor's Motion to Stay fails to identify a single error of this Court in entering the Sale Order.

This Court notes that significant time, energy, and effort has been expended by multiple parties in obtaining a $600,000 offer from Gemini to purchase the Property, which is the highest and best offer any party in this case has procured. In spite of Javino's obstructions, the Trustee has properly administered this estate, and sought the best value for the Property for nearly five months prior to filing the Sale Motion; Reliant marketed the Property and the Trustee and Reliant negotiated and obtained the highest and best offer for the estate and its creditors and equity holders. Debtor and Javino have not produced an actual higher or better offer, despite the

16

fact that the Sale Motion was noticed for a hearing sixty days after it was filed, and despite the fact that the Sale Order specifically provided Javino with a further two weeks to locate a higher and better offer. Although Debtor asserts the Property is worth more than the Gemini sale price, it offers no proof of this whatsoever.

Further, as noted in the Trustee's Objection to Stay, the Motion to Stay contains numerous "flawed statements and theories." Objection to Stay at ¶ 43. Debtor asserts that the Trustee and Reliant are the only ones who will benefit from a sale of the Property, ignoring the two mortgages against the Property that are of record, the tax claims that Debtor itself scheduled, and the fact that it is "Mr. Javino [who] has caused the Trustee to needlessly incur legal fees in his administration of Debtor's case." Objection to Stay at ¶ 17. Debtor's argument that the damage to the estate caused by a sale outweighs the benefit ignores the fact that the mortgages, as well as all schedules and filed claims, would be satisfied from the sale proceeds. Debtor's assertion that its Petition should be treated as "void ab initio" has already been overruled by this Court, and ignores the fact that the Minutes annexed to Javino's Reply Affidavit indicate Debtor expressly authorized a bankruptcy filing under "Chapter 7 or 11 FOR REORGANIZATION OR LIQUIDATION"; in any event, Debtor cites no legal authority for this "void ab initio" proposition, and the Trustee cites contrary case law in his Objection. *See* Objection to Stay at ¶¶ 47-48 (citing cases). Debtor asserts that its appeal may be rendered moot if a stay is not granted, but cites no authority why this argument supports granting a stay, especially on the facts of this case.

Finally, and tellingly, the Motion to Stay conspicuously lacks any offer to post a supersedeas bond pending appeal. *See* FED. R. CIV. P. 62 (c), (d); FED. R. BANKR. P. 7062. As noted in the Trustee's Objection to Stay, "[i]f a stay pending appeal is likely to cause harm by

diminishing the value of an estate or 'endanger [the non-moving parties'] interest in the ultimate recovery,' and" as in this case, "there is no good reason not to require the posting of a bond, then the court should set a bond at or near the full amount of the potential harm to the non-moving parties." *Adelphia*, 361 B.R. at 368 (alternation in original).

Based upon the entire record before this Court, Debtor has failed to establish that its appeal of the Sale Order has a substantial possibility of success on the merits.

**4. Debtor Has Cited to No Compelling Public Interest Supporting a Stay**

As the party seeking a stay pending appeal, Debtor bears the burden of demonstrating a legitimate and compelling public interest in support of a stay. *See Taub*, 470 B.R. at 277 (quoting *Smith*, 2009 WL 366577, at *2). In considering a request for a stay pending appeal, courts consider a variety of public interest concerns, including "the expeditious administration of bankruptcy cases [which] is impaired by obstructing the trustee's efforts to collect, liquidate and distribute assets to creditors of the estate." *In re Albicocco*, 2006 WL 2620464, at *4 n.8 (E.D.N.Y. Sept. 13, 2006) (quoting *In re Metiom, Inc.*, 318 B.R. 263, 272 (S.D.N.Y. 2004)).

Here, again, Debtor's Motion to Stay does not address any public policy consideration that would support granting a stay pending appeal other than Debtor's belief that Gemini "is clearly getting a property for below market value," a belief that is directly contradicted by the market evidence of the value of the Property.

By contrast, the public interest in expeditiously administering Debtor's bankruptcy case weighs strongly in favor of denying Debtor a stay pending appeal. Whether acting on behalf of Debtor or on his own behalf, Javino has consistently obstructed, frustrated and interfered with the Trustee's efforts to collect, liquidate and distribute the assets of Debtor's estate.

For the foregoing reasons, the Motion to Stay pending appeal should be denied.

## **Conclusion**

Based upon the foregoing, it is hereby

**ORDERED**, that Debtor's Motion to Stay this Court's May 22, 2013 Order authorizing the Sale of Debtor's Property pending appeal is DENIED; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the Debtor and the Trustee.



**Dated: June 10, 2013**  
      **Central Islip, New York**

_____  
**Alan S. Trust**  
**United States Bankruptcy Judge**